## C. F. MUELLER CO. v. A. ZEREGAS SONS, Consolidated.

(Circuit Court of Appeals, Second Circuit. May 17, 1926.)

No. 353.

**1. Patents ☞328.**

Design patent 42,608, for an ornamental design for a noodle, *held* invalid.

**2. Patents ☞91(3).**

There are no presumptions or artificial rules regulating determination of question as to real inventor, and evidence of one witness may be sufficient.

**3. Patents ☞328.**

Patent No. 1,192,336, for a machine for folding noodles, *held* valid.

**4. Patents ☞328.**

Patent No. 1,217,891, for a method of folding noodles, *held* valid.

**5. Patents ☞227—Accounting should be granted, though defendant did not think it would infringe, and was assured there would be no infringement.**

On finding of patent infringement, with no finding of laches on part of plaintiff, accounting for past infringement must be granted, though defendant did not think it would infringe, and was assured by manufacturer of its machine, whose predecessor built the patented device, that there was no infringement.

**6. Patents ☞227.**

Injunctive relief is proper, even against an accidental infringement of patent.

**7. Patents ☞312(1).**

User of patent infringing device is legally presumed to have intended legal consequences of its act.

**8. Patents ☞314—Motion for leave to take additional testimony to establish that defense of patent infringement suit was conducted by certain corporation held discretionary with trial judge.**

In patent infringement suit, refusal of application by plaintiff at close of evidence to take additional testimony to establish that defense had been conducted by certain corporation *held* discretionary with trial judge.

Appeal from the District Court of the United States for the Eastern District of New York.

Patent infringement suit by the C. F. Mueller Company against A. Zeregas Sons, Consolidated. From a judgment upholding

the patents, but refusing an accounting for past infringement, both parties appeal. Reversed and remanded, with directions.

Suit is for infringement of all the claims of three patents issued to one Mueller and owned by plaintiff. These patents are as follows: No. 1,192,336, for a "machine for folding noodles"; No. 1,217,891, for a "method of folding noodles"; and design patent 42,608, for an "ornamental design for a noodle." Plaintiff counted on all the 45 claims of the mechanical patent and the 30 claims of the method patent, of which two grants of monopoly it may be said that they grew out of the same application, division of which was compelled by the provisions of the Office, and the method patent is in our opinion no more than a description of the operation or function of the machine, which is really what Mueller invented.

This machine reveals no special piece of mechanism requiring description. It is a combination of separately well-known mechanical devices, which makes rapidly and accurately, out of sliced sheets of dough, folded noodles bearing resemblance to the letter W. The sixth claim of the mechanical patent illustrates sufficiently that patent, and is as follows:

"In a machine of the character described, the combination of means for folding a layer comprising a series of side by side, long, relatively narrow bodies of dough, at intermediate portions of said bodies, to produce two layers and a single fold, means for spacing apart the end portions of each folded body sidewise in the plane of the layers, to stagger the end portions in one layer relatively to the end portions in the other layer, and means for folding said folded bodies of the two layers crosswise between their ends and the first fold, substantially as specified."

The second claim of the method patent reads thus:

"The herein described method, which consists in folding a strip of dough to form a W-shaped body, substantially as specified."

The "herein described method" may be briefly said to consist in putting the dough into the machine covered by the mechanical patent. The design patent shows, describes, and claims the folded noodle, that can be held so as to appear to the eye as a letter W. The court below upheld all three patents, but refused an accounting for past infringement.

After the close of evidence, plaintiff moved for leave to take additional testimony, in order to establish that the defense of this suit had been conducted by a certain named corporation in pursuance of an agreement or contract theretofore made between said named corporation and this defendant. This the trial judge "denied without prejudice to a renewal, provided I shall find that such application may be necessary before a decision of the case can fairly be made."

Defendant appealed from the upholding of the patents, and plaintiff from denial of an accounting and refusal to admit the above recited additional evidence.

Mayer, Warfield & Watson, of New York City (Lawrence Bristol and Donald L. Brown, both of New York City, of counsel), for plaintiff.

Newell & Spencer, of New York City (Emerson R. Newell, of New York City, of counsel), for defendant.

Before ROGERS, HOUGH, and MACK, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The design patent should have been invalidated. It does not pretend to cover anything except a piece of dough shaped like a letter W. Even assuming invention, it is open to at least two objections: (1) There is nothing about the design or shape which appeals to the aesthetic sense (Dietz Co. v. Burr, etc., Co., 243 F. 592, 155 C. C. A. 290); and (2) the record before us proves that the design is intended merely to protect the shape of what comes out of plaintiff's patented machine (Harmon Paper Co. v. Prager [C. C. A.] 287 F. 841).

Considering the mechanical and method patents together, the defense thereto may be separated into two parts: First, that one Wild, and not Mueller, was the real inventor, or that Wild was at least the coinventor with Mueller; and, second, that certain prior patents anticipated these now in suit, no matter who was the real inventor thereof.

[2] The question of invention as between Mueller and Wild is really only one of veracity. There are no presumptions or artificial rules regulating such an investigation, and the evidence of one witness may be sufficient. Tompkins Co. v. N. Y., etc., Co., 159 F. 133, 86 C. C. A. 323. We perceive no reason to discuss this question further, and are satisfied with the decision of the court below.

[3, 4] Beside certain foreign patents, defendant has urged, if not as strict anticipation, as something near enough to deprive the patents in suit of all claim to invention, the Amouroux French patent. We agree that this is the nearest thing to Mueller shown by the record. On this point also we agree with

the court below, but may sum the matter up as follows:

One of the virtues of Mueller's apparatus is that there is very complete co-ordination between the mechanical cutting, the feeding, and the folding of the noodles. No such co-ordination is discoverable in the prior art patents, whether domestic or foreign. Mueller's double folding is effected by means, so far as we can see, entirely different from that of any other or earlier device. Double folding was not altogether new, but the earlier efforts thereat had depended upon a sidewise movement, both at the first fold and the second fold. This is not true of Mueller. In short, by a combination of quite familiar mechanical devices Mueller has succeeded in producing a very old article of food with what seems to be unexampled rapidity and economy.

If the patents are valid, infringement is not denied. Indeed, it cannot be, for defendant is the user of a machine made by the concern employed by Mueller to build what he invented. Wild, who claimed at least co-invention, was an employee of that concern, whose cause was championed by his employers; so that any one who made the slightest inquiry would have known that what those employers were selling was an infringement, unless Wild's story of invention was believed.

The court below decreed validity and found infringement. It also found that there had been no laches on the part of plaintiff in proceeding against this defendant infringer. Nevertheless accounting was denied. The reason for this step was that defendant was an "innocent infringer," which had bought its machine under assurances from the people who manufactured for Mueller or their successors that there would be no trouble over patents.

Doubtless the situation is annoying, perhaps even distressing, for defendant; but if persons who put faith in manufacturers of infringing articles are to be protected by their faith from accounting to the real owners of what they buy, a very easy path is open for the aborting of most patent suits.

[5-7] Since there is a finding of no laches on plaintiff's part, (with which we agree), we know of no legal reason for refusing the relief of an accounting after hearing on the merits. Against even an "accidental infringement," injunctive relief is proper. Thompson v. Bushnell Co., 96 F. 238, 37 C. C. A. 456. This infringement is not accidental, nor in any true sense unintentional. Doubtless defendant did not think it would infringe by buying where it did, but it is legally presumed to have intended all the legal consequences of what it did. This suit is one of those consequences.

The application made by plaintiff to take further testimony after hearing closed must have had one or both of two purposes: (1) To show that the named corporation had become privy to the suit and should be liable for its costs; and/or (2) to show the same fact to the end that said corporation could not try this case all over again, if it were subsequently sued on the same patents.

[8] Whichever speculation regarding plaintiff's purpose is correct, we think the matter remains one of discretion. The case was closed, and the trial court was not under any compulsion to reopen it. If plaintiff desired to fix a third party with costs, that, like all cost matters in equity, is discretionary; and if the desire was to make a record for the future, it was unnecessary, for, if such future case be brought, the fact of privity in this case will then be matter of proof. Elliott Co. v. Roto Co., 242 F. 941, 155 C. C. A. 529; Columbia, etc., Co. v. Waterman Co. (C. C. A.) 11 F.(2d) 216. We do not think this assignment of error well taken, although we perceive no valid reason why, if plaintiff wished to take the evidence, it should not have been permitted so to do.

It is ordered that the decree appealed from be reversed, without costs, and the cause remanded, with directions to enter decree dismissing the bill in respect of design patent 42,608, and sustaining the bill, with costs in the District Court, in respect of the other two patents sued on, and that such decree grant to the plaintiff the usual relief by way of accounting and injunction in respect of the two patents sustained.